[Cite as *State v. Jones*, 2013-Ohio-2231.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                   :

    Plaintiff-Appellee                    :           C.A. CASE NO.    25388

v.                                              :           T.C. NO.    11CR4276

SAMUEL JESSE JONES, III                         :           (Criminal appeal from
                                                    Common Pleas Court)

    Defendant-Appellant                   :

                                                :

. . . . . . . . . .

## **O P I N I O N**

Rendered on the    31st    day of     May    , 2013.

. . . . . . . . . .

MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 15 W. Fourth Street, Suite 100, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}   Defendant-appellant Samuel J. Jones, III, appeals his conviction and

sentence for possession of heroin, in violation of R.C. 2925.11(A), a felony of the fifth degree, which was entered upon his plea of no contest made following the trial court's denial of his motion to suppress. Jones filed a timely notice of appeal with this Court on September 27, 2012.

{¶ 2} On November 10, 2010, Jones was placed on community control as part of his sentence after being convicted of possession of heroin by the Greene County Court of Common Pleas. As part of his community control, Jones was required to sign a Greene County Probation Agreement. Of particular significance to the instant appeal is Rule eleven in the agreement, which states as follows: "I will be subject to search of my person or property in a reasonable manner and in a reasonable time by my Probation Officer when there are grounds to believe a violation of community control has occurred or is about to occur."

{¶ 3} Probation Officer Matthew Johnson was assigned to Jones' case at the beginning of July, 2011. At the time that he received the assignment, Johnson's supervisor told him to "[w]atch this guy [Jones] closely because we're getting calls on him." Johnson testified that he had an initial face-to-face meeting with Jones around the same time period. Johnson testified that Jones informed him that he was residing at 2501 Uhl Court in Kettering, Ohio, with his son who was approximately eighteen to twenty-one years old at the time. Johnson acknowledged that at that time, Jones was stable and taking his medication as needed. Johnson also testified that as a result of the meeting, he did not believe that Jones was violating the terms of his community control at that time.

{¶ 4} Johnson, however, testified that at some point earlier in May of 2011, the

probation department received an anonymous phone call from an individual who stated that he or she was worried that Jones was developing a problem with prescription pills. The anonymous caller further stated that they believed that Jones was providing the pills to his son and his son's friend.

{¶ 5} Johnson also testified that on June 30, 2011, Jones' ex-wife contacted the probation department and stated that she had been cleaning and discovered a heroin capsule in the chair where her son had recently been sitting in her residence. Jones' ex-wife did not bring the empty capsule to the Greene County Probation Department. Rather, per Johnson's testimony, she allegedly took the empty capsule to the Bellbrook Police Department. But this was never verified. Moreover, Johnson testified that Jones' ex-wife visited him at the probation department on August 1, 2011(after Johnson's face-to-face meeting with Jones) and informed him that she was very worried about Jones and was concerned that he was getting their son involved with heroin. We note that months earlier in September and November of 2010, Jones tested positive for morphine. Johnson, acknowledged, however, that Jones had not tested positive for contraband since that time.

{¶ 6} On August 4, 2011, Johnson, accompanied by his supervisor, Brian Martin, made an unannounced visit to Jones' residence in order to investigate the alleged drug activity. Upon arriving, Johnson knocked on the door, and approximately fifteen seconds later, Jones opened the door slightly. Johnson testified that Jones was trying to control his dog when he opened the door. Jones left the door ajar and went to put the dog in the backyard. When Jones left, Johnson and Martin entered the residence. Johnson testified that he did not ask permission to enter Jones' residence, nor did he recall if Jones invited

them in.

{¶ 7}  Once Jones returned from letting the dog out, Johnson asked him if anyone else was in the residence.  Jones responded "no," but Martin checked the house to be sure. While clearing the residence, Martin located a gun in one of the rooms.  While Martin was looking around, Johnson asked Jones to come over near the front door to look at his forearms.  Johnson observed some dried blood on Jones' forearms.  Johnson testified that he asked Jones the last time he used heroin.  Jones stated that he had used heroin that same morning.  Johnson placed Jones under arrest, handcuffed him, and patted him down. While searching Jones, Johnson found a brown vial containing heroin in his right front pocket.  Upon further questioning from Johnson, Jones stated that he had bought the heroin the night before and used it approximately three times before the probation officers' arrival that day.  Jones was subsequently charged with possession of heroin.

{¶ 8}  On February 8, 2012, Jones was indicted for one count of possession of heroin.  At his arraignment on February 23, 2012, Jones stood mute, and the trial court entered a plea of not guilty on his behalf.  Jones filed a motion to suppress on March 30, 2012.  A hearing was held on said motion before the trial court on June 29, 2012.  On July 17, 2012, the trial court issued a decision overruling Jones' motion to suppress.

{¶ 9}  On August 1, 2012, Jones entered a no contest plea to one count of possession of heroin.  The trial court found him guilty and sentenced him to community control sanctions not to exceed five years.

{¶ 10}  It is from this judgment that Jones now appeals.

{¶ 11}  Jones' sole assignment of error is as follows:

{¶ 12} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."

{¶ 13} In his sole assignment, Jones contends that the trial court erred when it overruled his motion to suppress. Specifically, Jones argues that the probation officers lacked reasonable suspicion of criminal activity. Additionally, Jones asserts that the probation officers lacked reasonable grounds to believe that a violation of probation had occurred. Jones also asserts that he did not consent to the probation officers' warrantless entry into his residence.

{¶ 14} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac,* 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, citing *State v. Retherford*, 93 Ohio App.3d 586, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id*.

{¶ 15} Pursuant to R.C. 2967.131(C), a probation officer who is "engaged within the scope of [his] duties or responsibilities" may conduct a warrantless search of the defendant's person or property if the officer has "reasonable grounds to believe" that the defendant "is not abiding by the law or otherwise is not complying with the terms and conditions" of his community control sanctions. Although the term "reasonable grounds" is

not defined in R.C. 2967.131(C), the statute appears to have been enacted in response to the U.S. Supreme Court's decision in *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), which considered the constitutionality of a similarly worded Wisconsin statute that permitted probation officers to conduct a warrantless search of a probationer's residence so long as the probation officers had _reasonable grounds to believe_ that contraband was present. *State v. Mattison*, 2d Dist. Montgomery No. 17554, 1999 WL 957648 (September 3, 1999).

{¶ 16}   Under the facts in *Griffin*, a probation officer conducted a warrantless search of the home of the defendant, a probationer, after receiving an _unauthenticated tip_ from an unidentified police officer that _there were or might be_ guns in his home. *Id.* at 871, 878. The officer found a weapon in defendant's home, and he was subsequently charged with Possession of a Firearm by a Convicted Felon. The trial court denied the defendant's motion to suppress, and he was subsequently convicted. Both the intermediate appellate court and the Wisconsin Supreme Court affirmed Griffin's conviction.

{¶ 17}   The United States Supreme Court held that the search of the defendant's home did not violate the Fourth Amendment _because it was carried out pursuant to a regulation that itself satisfies the Fourth Amendment's reasonableness requirement under well-established principles._ *Id.* at 872-873. The *Griffin* court began its analysis by stating that _[a] probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable._ _ *Id.* at 873. The court noted that while it usually required that searches be conducted only pursuant to warrants supported by probable cause, it had _permitted exceptions when _special needs, beyond the normal need for law

enforcement, make the warrant and probable-cause requirement impracticable._ _ *Id.*, quoting *New Jersey v. T.L.O.,* 469 U.S. 325, 351, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). The court found that a state's operation of a probation system is a _special need_ of the state, beyond the normal need for law enforcement, which _permitt[ed] a degree of impingement upon privacy that would not be constitutional if applied to the public at large._ *Griffin, supra,* at 875. The court concluded that the special needs of Wisconsin's probation system made the warrant requirement _impracticable,_ and justified replacing the probable cause standard with that of "reasonable grounds._ Specifically, the court stated:

> [i]n some cases-especially those involving drugs or illegal weapons-the probation agency must be able to act based upon a lesser degree of certainty than the Fourth Amendment would otherwise require in order to intervene before a probationer does damage to himself or society. The agency, moreover, must be able to proceed on the basis of its entire experience with the probationer, and to assess probabilities in the light of its knowledge of his life, character, and circumstances.

{¶ 18} Accordingly, in order to establish "reasonable grounds," an officer need not possess the same level of certainty that is necessary to establish "probable cause." *State v. Karns*, 196 Ohio App.3d 731, 2011-Ohio-6109, 965 N.E.2d 352, ¶ 33 (5th Dist.). Instead, the officer's information need only establish the _likelihood_ that contraband will be found in a probationer's home. *Id*.

{¶ 19} In *United States v. Knights*, 534 U.S. 112, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001), the United States Supreme Court upheld _probation searches_ conducted pursuant to

a condition of probation, provided that a _reasonable suspicion" exists that evidence of criminal activity can be found in a probationer's home. *Id*. at 120-121, 122 S.Ct. 587, 151 L.Ed.2d 497. _Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term _probable cause,_ a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable. Those interests warrant a lesser than probable-cause standard here. When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable._ (Citations omitted). *Knights* at 121, 122 S.Ct. 587, 151 L.Ed.2d 497. The consent form in *Knights* stated that a search could be conducted without a warrant. *Karns*,196 Ohio App.3d 731, at ¶ 34.

{¶ 20} Upon review, we conclude that the trial court did not err when it held that Probation Officer Johnson had "reasonable grounds" upon which to believe that Jones had violated the terms of his probation and to execute a search of his person and his property. Prior to making the unannounced visit to Jones' residence, Johnson was aware of an anonymous call warning that Jones was using drugs. Jones' ex-wife contacted the probation department and stated that she had been cleaning and discovered a heroin capsule in the chair where her son had recently been sitting in her residence. She believed the capsule had been given to her son by Jones. Johnson also spoke with Jones' ex-wife in person. She stated that she was very worried about Jones using drugs and was concerned that he was getting their son involved with heroin. While more remote in time, Johnson knew that Jones had tested positive for morphine twice in September and November of

2010. Furthermore, Johnson's supervisor had alerted him "to watch this guy [Jones] closely." Based on the foregoing, we find that the trial court did not err in finding that Johnson and Martin's search of Jones' person and property was supported by reasonable grounds.

{¶ 21} Lastly, we find that based upon the explicit terms of his probation agreement, Jones' consent was unnecessary prior to Johnson and Martin's entry into his residence as the officers possessed a reasonable suspicion that contraband was present.

{¶ 22} Jones' sole assignment of error is overruled.

{¶ 23} Jones' sole assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Michele D. Phipps
Brock A. Schoenlein
Hon. Barbara P. Gorman