[Cite as *State v. Turpin*, 2017-Ohio-7435.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27453 |
| | : | |
| v. | : | Trial Court Case No. 2016-CRB-5125 |
| | : | |
| CHAD TURPIN | : | (Criminal Appeal from Municipal Court) |
| | : | |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 1st day of September, 2017.

. . . . . . . . . . .

TROY B. DANIELS, Atty. Reg. No. 0084957, Assistant City of Dayton Prosecutor, 335 West Third Street, Room 372, Dayton, Ohio 45402      Attorney for Plaintiff-Appellee

ANGELINA N. JACKSON, Atty. Reg. No. 0077937, 117 South Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

TUCKER, J.

**{¶ 1}** Defendant-appellant, Chad E. Turpin, appeals from his convictions in Dayton Municipal Court Case No. 2016-CRB-5125, arguing that the court erred by overruling his motion to suppress evidence obtained as the result of a warrantless search in violation of his Fourth Amendment rights. In response, the State argues that Turpin's Fourth Amendment rights were not violated, but that even if his rights were violated, the exclusionary rule should not apply in this case pursuant to the attenuation doctrine. We find that the trial court erred by overruling Turpin's motion to suppress, and therefore, we reverse.

## I. Facts and Procedural History

**{¶ 2}** On July 28, 2016, an officer with the Dayton Police Department received a dispatch directing him to a residence on Haverfield Road in Dayton in response to a report of a recovered stolen vehicle. Decision & Entry Overruling Def.'s Mot. to Suppress 1, Dec. 29, 2016 [hereinafter *Decision*]; Tr. of Hr'g on Def.'s Mot. to Suppress 5, Aug. 31, 2016 [hereinafter *Tr. of Hr'g*]. The dispatch identified a suspect, James Delecce, and reported an active warrant for his arrest. Tr. of Hr'g 6. Turpin resided at the Haverfield Road location at that time; Delecce apparently did not.[1] *Id.* at 3-4 and 19.

**{¶ 3}** When the officer arrived, he found the stolen vehicle in the driveway. Decision 1; Tr. of Hr'g 6. The vehicle-owner's mother arrived shortly afterward to have it towed, and she told the officer that she had received a telephone call from the Haverfield Road residence informing her that the vehicle could be found there. Tr. of Hr'g 6-7.

---

[1] The Dayton Police Department officer testified that the dispatch did not list the Haverfield Road residence as Delecce's address. Tr. of Hr'g 19.

Having verified that the vehicle was unoccupied, the officer decided to determine whether the same was true of the residence. *See id.* at 7 and 17.

{¶ 4} The officer tried knocking on the front door while shouting "Dayton Police," as well as on an adjacent window, but nobody answered. *Id.* at 7-8. He then walked around to an entrance on the right side of the house, a solid white door that he found slightly ajar. *See id.* at 8 and 20-22. After knocking again without response, the officer pushed the door open, stepped into the house, and called out to identify himself. *See id.* at 9 and 22. Still receiving no response, the officer walked into the adjoining room and saw a man, later identified as Turpin, sleeping on a sofa roughly 15 to 20 feet away. *Id.* at 22-23.

{¶ 5} From this vantage point, the officer observed Turpin's trousers or shorts around his ankles, and in light of his unresponsiveness, the officer suspected that Turpin might have overdosed after injecting heroin into his groin. *Id.* at 9-10 and 23. Turpin continued to be unresponsive to the officer's shouts, so the officer moved closer. *Id.* at 11 and 24. Standing within a foot or two of Turpin, the officer saw "two syringes right next to him" along with a "significant amount of cash." *Id.* at 11. Eventually, Turpin awoke and identified himself, after which the officer discovered an active warrant for his arrest and took him into custody. *Id.* at 11 and 27.

{¶ 6} On August 15, 2016, Turpin moved the trial court to suppress all evidence obtained as a result of the officer's warrantless search of his residence. Decision 1. The court held a hearing on Turpin's motion on August 31, 2016, and in the Decision, docketed on December 29, 2016, determined that although the "officer's initial entry was a constitutional violation," the "existence of a preexisting warrant was an intervening

circumstance that interrupted the connection between the unconstitutional police conduct and the discovery of [the] evidence." Decision 3. Turpin commenced the instant appeal on February 7, 2017.

## II. Analysis

{¶ 7} Turpin's sole assignment of error is the following:

THE TRIAL COURT ERRED IN DENYING MR. TURPIN'S MOTION TO SUPPRESS BY FINDING THAT THE ATTENUATION DOCTRINE RENDERED THE EXCLUSIONARY RULE INAPPLICABLE TO EVIDENCE SEIZED AS A RESULT OF THE UNCONSTITUTIONAL WARRANTLESS ENTRY INTO HIS HOME.

{¶ 8} Turpin argues that the trial court erred by applying the attenuation doctrine to "primary evidence" that was "seized as a direct result" of the warrantless search of his residence because the doctrine applies only to "derivative evidence." Appellant's Br. 5. Further, Turpin argues that, regardless of the distinction between primary evidence and derivative evidence, the discovery of an active warrant for his arrest was not an "intervening circumstance" for purposes of the attenuation doctrine. *Id.* at 9. In opposition, the State argues that the initial entry into Turpin's residence was constitutionally permissible, but that even if it were not, the attenuation doctrine should apply in this case. Appellee's Br. 4-5 and 7-9.

{¶ 9} Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d

583 (1982). Accepting "these facts as true," assuming that they are properly supported, "the appellate court must then independently determine, without deference to the [legal] conclusion[s] of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

{¶ 10} The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *See*, *e.g.*, *Terry v. Ohio*, 392 U.S. 1, 8, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Warrantless searches and seizures violate this prohibition unless conducted pursuant to one of the "few specifically established and well-delineated exceptions." (Citations omitted.) *See*, *e.g.*, *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

{¶ 11} The " 'exclusionary rule' serves as the primary means for deterring violations of the Fourth Amendment." *See*, *e.g.*, *United States v. Pacheco-Alvarez*, 227 F.Supp.3d 863, 894 (S.D.Ohio 2016), citing *Utah v. Strieff*, ___ U.S. ___, 136 S.Ct. 2056, 2061, 195 L.Ed.2d 400 (2016). When "applicable, the exclusionary rule bars use of both 'primary evidence' obtained as a direct result of an illegal search[, as well as] evidence later discovered and found to be derivative" of the search. *Id.*, citing *Strieff*, 136 S.Ct. at 2061. This rule itself has exceptions, one of which is the attenuation doctrine at issue here.

{¶ 12} According to the attenuation doctrine, evidence "is admissible when the connection between unconstitutional police conduct and the evidence [obtained as a result] is remote or has been interrupted by some intervening circumstance," such that " 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence.' " *Strieff*, 136 S.Ct. at 2061, quoting *Hudson*

*v. Michigan*, 547 U.S. 586, 593, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). Application of the attenuation doctrine entails consideration of three factors: first, the " 'temporal proximity' between the unconstitutional [search] and the discovery of evidence to determine how closely the discovery of [the] evidence followed the * * * search"; second, the " 'presence of intervening circumstances' "; and third, the " 'purpose and flagrancy of the official misconduct.' " *Id.* at 2061-2062, quoting *Brown v. Illinois*, 422 U.S. 590, 603-604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

{¶ 13} As a threshold matter, we concur with the trial court's finding that the warrantless entry into Turpin's residence violated the Fourth Amendment.[2] Decision 3. An "arrest warrant is sufficient [authorization] to enter a * * * residence to effectuate the warrant if [a] police [officer] has reason to believe that the suspect lives in the [residence] and is in fact [there] at the time the arrest warrant is executed." (Emphasis added.) *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶ 10. In other words, "police officers do not need probable cause to enter a residence to execute an arrest warrant provided they have a reasonable belief, founded in common sense and based on the totality of the circumstances, that the suspect resides in the home and that he is present at the time." (Emphasis added.) *Id.* at ¶ 11.

{¶ 14} Here, the Dayton Police Department officer who responded to the Haverfield Road location had no reason to believe that the suspect in the vehicle theft resided there; in fact, the officer testified at the hearing on Turpin's motion to suppress

---

[2] Turpin asserts that we "lack[] jurisdiction to consider [this] issue" because the State did not request leave to offer argument on "the constitutionality of the officer's initial entry into the home." Appellant's Reply Br. 1. The trial court ruled on the issue in its decision, however, and we review the court's legal conclusions essentially de novo. *See, e.g., State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

that the dispatch did not list the Haverfield Road address as the suspect's residence. Tr. of Hr'g 19. The officer otherwise did not comment on the specific issue of why, or even whether, he expected to find the suspect inside the house. *See generally id.* at 5-29.

{¶ 15} In its brief, the State posits that the officer reasonably believed "that <u>someone</u> was presently inside the home" because "there was a car parked in the driveway[,] and [the side] entry door was ajar." (Emphasis added.) Appellee's Br. 5. Yet, as we held in *Cooks*, the officer would have been justified in entering the residence to execute the arrest warrant for Delecce—the suspect in the vehicle theft—only if he had a reasonable belief that Delecce not only resided there, but was actually present at that moment. The officer's mere suspicion that "someone" was present would not have justified his nonconsensual intrusion. Furthermore, a number of other, equally likely explanations for the presence of the stolen car and the slightly ajar side-entry door could be proposed, and the State's position fails to account for the fact that the vehicle-owner's mother received a telephone call from the Haverfield Road residence informing her that she could find the vehicle there.[3] Tr. of Hr'g 6 (describing the source of the information); Appellee's Br. 4-6. We hold that the information available to the officer when he responded to the location supported only an inchoate suspicion that Delecce could be found there at that time, meaning that the outstanding arrest warrant did not justify the officer's nonconsensual entry. Thus, we find that the officer's entry into the residence was constitutionally impermissible under the circumstances.

---

[3] The State did suggest during oral arguments that the telephone call could have supported a reasonable belief on the officer's part that Delecce resided at the Haverfield Road location or was, at least, on the premises. In the absence of any detailed explication, this suggestion seems unlikely.

{¶ 16} Additionally, we note that the trial court found as a matter of fact that the officer "went to * * * Haverfield [Road] to investigate the stolen vehicle because he believed that the resident [might have been] Delecce or that the resident [might have known Delecce's] whereabouts." Decision 1-2. We overrule this finding of fact because it is unsupported by the evidence. The officer himself testified that he went to Haverfield Road because he received a dispatch directing him to respond to that location to recover a stolen vehicle, and he made no reference to having knowledge or suspecting, before he arrived, that Delecce would be there. *See* Tr. of Hr'g 4-7.

{¶ 17} Although we concur with the trial court regarding the unlawfulness of the officer's initial entry into the residence, we find that the court erred when it determined that the evidence against Turpin should be admitted pursuant to the attenuation doctrine. First, the officer discovered the evidence against Turpin almost immediately after his unconstitutional entry into the Haverfield Road residence. The rapidity with which the officer discovered the evidence following his entry into the residence supports suppression. *Utah v. Strieff*, ___ U.S. ___, 136 S.Ct. 2056, 2063, 195 L.Ed.2d 400 (2016). Second, the entirety of the officer's unconstitutional conduct was completed before he discovered the arrest warrant for Turpin; consequently, the discovery of the warrant cannot be said to have been an "intervening circumstance" with respect to the unconstitutional conduct. *See State v. Hines*, 2d Dist. Montgomery No. 24346, 2012-Ohio-207, ¶ 3-7 and 15.

{¶ 18} Third, the officer's entry into the residence, under the circumstances, constituted a purposeful or flagrant violation of the Fourth Amendment, conduct that the exclusionary rule is intended to deter. Before he arrived at Haverfield Road, the officer

had little or no information from which he could have formed a reasonable belief that Delecce either resided there or was present at the time, nor did the officer's investigations outside of the residence support such a belief.

{¶ 19} Moreover, the officer had only a modest description of Delecce as "a white male, about thirty years old," along with Delecce's height and weight. Tr. of Hr'g 6 and 19. When the officer first caught sight of Turpin on the sofa, the sofa itself was "turned to the side," affording the officer only an indirect view; in fact, even though the officer could see that Turpin's trousers or shorts were around his ankles, the officer could not see whether Turpin was wearing undergarments. *Id.* at 23-24. The officer, then, had almost no objective basis for suspecting that the man on the sofa was Delecce, apart from the fact that Turpin is also "a white male." *See id.* at 9-10.

{¶ 20} In its brief, the State argues that because the officer mistook Turpin for Delecce, the discovery of the arrest warrant for Turpin did constitute an intervening circumstance because the officer would, at that point, have been entitled to approach Delecce (i.e., had Delecce actually been the man on the sofa, instead of Turpin) and place him under arrest. *See* Appellant's Br. 6. The logic of this argument notwithstanding, the United States Supreme Court has described the third factor in the attenuation doctrine analysis as " 'particularly' significant," and as a general principle of Fourth Amendment jurisprudence, "the right of [persons] to retreat into [their] own home[s] and there be free from unreasonable governmental intrusion" is "[a]t the very core" of that which the Fourth Amendment is intended to protect. *Strieff*, 136 S.Ct. at 2062, quoting *Brown v. Illinois*, 422 U.S. 590, 604, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); *Silverman v. United States*, 365 U.S. 505, 511, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). Hence, we reject the foregoing

argument in light of the flagrancy of the officer's unconstitutional entry into the Haverfield Road residence. We find accordingly that all three factors weigh strongly in favor of suppression, and we hold that the trial court erred by overruling Turpin's motion to suppress.

{¶ 21} Finally, we note that State offers several alternative arguments in favor of affirming the trial court: that the officer's entry was justified by exigent circumstances, and that the evidence against Turpin was properly admitted pursuant to either the plain view doctrine or the doctrine of inevitable discovery. Tr. of Hr'g 30; Appellee's Br. 6, 9 and 30. Regarding the first of these alternative arguments, "police may enter a home without a warrant where they have probable cause to search <u>and</u> exigent circumstances exist." (Emphasis added.) *State v. Carr*, 2d Dist. Montgomery No. 19121, 2002-Ohio-4201, ¶ 15, citing *Minnesota v. Olson*, 495 U.S. 91, 100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). This argument is unavailing because the officer did not have probable cause to search the premises. The remaining alternative arguments are res judicata because the State did not raise them before the trial court.[4] Turpin's sole assignment of error is sustained.

---

[4] These arguments would seem to have been unavailing in any event. The inevitable-discovery doctrine applies when "illegally obtained evidence * * * would have ultimately or inevitably been discovered during the course of a lawful investigation." *State v. Pippin*, 1st Dist. Hamilton Nos. C-160380 and C-160381, 2017-Ohio-6970, ¶ 19, citing *Nix. v. Williams*, 46 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 (1985), syllabus. As the record includes no evidence that Turpin was actively being investigated, or that the Dayton Police Department responded to Haverfield Road to execute the warrant for <u>his</u> arrest, the inevitable-discovery doctrine appears to be inapplicable in this case. Further, the plain view doctrine "is grounded on the proposition that once police are lawfully in a position to observe an item first-hand, its owner's privacy interest in that item is lost * * *." (Ellipsis in original.) *State v. Halczyszak*, 25 Ohio St.3d 301, 303, 496 N.E.2d 925 (1986), citing *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983). The officer in the instant case was not "lawfully in a position" to view anything when he encountered Turpin, rendering the plain view doctrine likewise inapplicable.

### III. Conclusion

**{¶ 22}** We hold that the trial court erred by overruling Turpin's motion to suppress in accord with the attenuation doctrine.   Therefore, we reverse the court's decision and remand the case for proceedings consistent with this opinion.

. . . . . . . . . . . . .

HALL, P.J. and FROELICH, J., concur.


Copies mailed to:

Troy B. Daniels
Angelina N. Jackson
Hon. Mia Wortham Spells