[Cite as *State v. Hinshaw*, 2018-Ohio-4226.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 27985 |
| | : | |
| v. | : | Trial Court Case No. 2017-CRB-7201 |
| | : | |
| KARLA HINSHAW | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of October, 2018.

. . . . . . . . . . .

EBONY N WREH, Atty. Reg. No. 0080629, City of Dayton Prosecutor's Office, 335 West Third Street, Room 372, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

JENNIFER CUNNINGHAM-MINNICK, Atty. Reg. No. 0088010, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Pursuant to R.C. 2945.67(A) and Crim.R. 12(K), the State of Ohio appeals from an order of the Dayton Municipal Court, which granted Karla Hinshaw's motion to suppress. For the following reasons, the trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

## I. Facts and Procedural History

{¶ 2} The evidence at the suppression hearing established the following facts.

{¶ 3} During the afternoon of November 2, 2017, Dayton Police Officer David Klawon received an e-mail identifying individuals who were "wanted" due to an outstanding warrant, and he became aware of two misdemeanor probation violation arrest warrants for Hinshaw. The officer ran Hinshaw's name through Justice Web and looked at photographs of her. Klawon saved a copy of her photo to his cell phone.

{¶ 4} Officer Klawon went to the address stated for Hinshaw on the "wanted list." The address was for an apartment building with four or five units. Upon arriving, Klawon spoke with a neighbor, who indicated that Hinshaw lived in Apartment F with her boyfriend, George. At that time, the officer did not know if Hinshaw was present in the apartment.

{¶ 5} The officer went to Apartment F, an upstairs apartment, and found the door broken and off its hinges. The doorway was "completely open," allowing the officer to see inside the apartment as he stood in the hallway. Officer Klawon knocked on the outside part of the door frame, and a man, identified as George,[1] approached the open

---

[1] It is unclear when or how Officer Klawon learned of the man's identity. Nevertheless, at the suppression hearing, Officer Klawon referred to the man inside the apartment as "George."

doorway from inside the apartment. The officer asked George who lived there, and George responded that he lived there with his girlfriend. Klawon asked if he could speak with the girlfriend, and George replied that she was in the bedroom. The officer persuaded George to ask his girlfriend to come into the living room. George went into the bedroom and returned without his girlfriend. Officer Klawon continued to wait outside the apartment. After a few minutes, the girlfriend came into the living room and sat on the couch. The officer immediately recognized the girlfriend as Hinshaw.

{¶ 6} Officer Klawon entered the apartment and asked for the girlfriend's name. George stated that his girlfriend's name was Kelly Rappa and provided a birthdate. The officer then went to Hinshaw and asked for her name; she also indicated that she was Kelly Rappa and gave the same date of birth. Officer Klawon showed George a photo of Hinshaw that he (the officer) had on his phone. George eventually stated, "Yeah, that's her." The officer also showed the photo to Hinshaw and told her that he knew who she was. Klawon asked Hinshaw to stand, and he placed her under arrest. Thereafter, Hinshaw provided accurate information about her identity.

{¶ 7} Officer Klawon took Hinshaw downstairs. He asked her why she had lied, and she said that "George told her to." Hinshaw apologized for lying. Officer Klawon testified that he had not yet provided *Miranda* warnings.

{¶ 8} As a result of Hinshaw's conduct, she was charged with falsification in violation of R.C. 2921.13 and obstructing official business in violation of R.C. 2921.31.

{¶ 9} Hinshaw moved to suppress the evidence against her, arguing that Officer Klawon unlawfully entered the apartment without a search warrant, that any statements she made were fruit of the poisonous tree, and that her statements were obtained in

violation of *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court held a hearing on the motion.

{¶ 10} In post-hearing briefing, Hinshaw argued that Officer Klawon was not authorized to enter the apartment based solely on a misdemeanor arrest warrant, and no exception to the Fourth Amendment warrant requirement justified his entry. Hinshaw further argued that her use of a false name was subject to suppression because it was obtained as a result of the illegal entry and was not an intervening criminal act.

{¶ 11} The State responded in its post-hearing memorandum that, after the officer saw Hinshaw, he was entitled to enter the apartment to arrest Hinshaw on the outstanding warrants. It further asserted that Hinshaw was not under arrest when the officer asked for her name, and thus *Miranda* did not apply at that time. The State also argued that Hinshaw's use of a false name constituted an independent intervening act, which justified her arrest.

{¶ 12} On April 24, 2018, the trial court granted Hinshaw's motion to suppress. The trial court concluded that Officer Klawon's initial entry into the apartment was without consent and without a search warrant and that no exigent circumstance justified his entry. The trial court stated that "Officer Klawon was merely arresting [Hinshaw] on a non-violent misdemeanor arrest warrant," implicitly concluding that such a warrant was insufficient to justify his entry. The trial court further found that "[t]he officer[']s entry into the home and subsequent questions of [Hinshaw] are derivative evidence that was discovered as a result of the illegal entry. There was no intervening criminal act involving violent or assaultive behavior."

{¶ 13} The State appeals from the trial court's ruling, raising two assignments of

error.

## II. Authority Provided by Misdemeanor Arrest Warrant

{¶ 14} The State's first assignment of error reads:

The trial court erred by granting the Defendant's motion to suppress evidence because officer had authority to enter residence in order to arrest Appellee [i.e., Defendant] for outstanding misdemeanor warrant.

{¶ 15} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id*.

{¶ 16} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment was directed." (Citation omitted.) *Payton v. New York*, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable. *Id*. at 586.

{¶ 17} " '[F]or Fourth Amendment purposes, an arrest warrant founded on

probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.' " *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 78, quoting *Payton* at 603; *see also Steagald v. United States*, 451 U.S. 204, 213-215, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981); *State v. Gardner*, 135 Ohio St.3d 99, 2012-Ohio-5683, 984 N.E.2d 1025, ¶ 22 ("[A]n arrest warrant authorizes the police to enter into an individual's home to seize him."). We have held that police officers do not need probable cause to enter a residence to execute an arrest warrant provided they have "a reasonable belief, founded in common sense and based on the totality of the circumstances, that the suspect resides in the home and that he [or she] is present at the time." *State v. Cooks*, 2d Dist. Clark No. 2016-CA-40, 2017-Ohio-218, ¶ 11; *State v. Turpin*, 2017-Ohio-7435, 96 N.E.3d 1171, ¶ 13 (2d Dist.).

{¶ 18} We note that an arrest warrant does not authorize police to enter the premises of a *third party* to arrest the subject of the warrant. *Martin* at ¶ 78; *Steagald* at 220. "For that, they must obtain a search warrant unless an exception to the warrant requirement justifies entry." *Martin* at ¶ 78, citing *Steagald* at 211-216.

{¶ 19} Hinshaw asserts that an arrest warrant for a misdemeanor does not provide authority to enter the residence of the individual subject to the misdemeanor warrant. Hinshaw acknowledges that she has not found any Ohio case addressing whether law enforcement can enter a private residence based solely on a misdemeanor arrest warrant. She notes, however, that the case law concerning the authority granted by an arrest warrant generally involves felony arrest warrants.

{¶ 20} We find no basis to distinguish a felony arrest warrant from a misdemeanor

arrest warrant concerning whether the warrant authorizes law enforcement officers to enter the home of the person subject to the warrant in order to effectuate an arrest. "The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search." *Steagald* at 212. "An arrest warrant is issued by a magistrate upon a showing that probable cause exists to believe that the subject of the warrant has committed an offense and thus the warrant primarily serves to protect an individual from an unreasonable seizure." *Id.* at 213.

{¶ 21} Crim.R. 4(A)(1), which governs the issuance of an arrest warrants, provides the same process for the issuance of a misdemeanor arrest warrant and a felony arrest warrant. That rule provides, in part:

> If it appears from the complaint, or from an affidavit or affidavits filed with the complaint, that there is probable cause to believe that an offense has been committed, and that the defendant has committed it, a warrant for the arrest of the defendant, or a summons in lieu of a warrant, shall be issued by a judge, magistrate, clerk of court, or officer of the court designated by the judge, to any law enforcement officer authorized by law to execute or serve it.

Crim.R. 4(A)(1). Regardless of the level of the offense, a warrant must be issued by a neutral court officer based upon a finding of probable cause. *See State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 23 (misdemeanor warrants issued without a probable cause determination were invalid). Thus, Crim.R. 4(A)(1) equally protects the Fourth Amendment interests of misdemeanor and felony offenders. Crim.R. 41(A)(2) permits a law enforcement officer to issue a summons in lieu of executing the

warrant by arrest for certain misdemeanor cases, but this rule in no way limits the authority to arrest that an arrest warrant provides. We therefore find no basis to conclude that a misdemeanor arrest warrant provides less authorization to enter a suspect's home to arrest that suspect than a felony arrest warrant provides.

{¶ 22} In this case, Officer Klawon saw Hinshaw's name and address on a list of individuals who were subject to an arrest warrant. After viewing photographs of Hinshaw, the officer went to the address provided on the "wanted list." A neighbor confirmed that Hinshaw lived at the apartment complex with her boyfriend, and the neighbor indicated the specific apartment in which she lived. Officer Klawon went to that apartment, knocked on the door frame, communicated with the boyfriend, and ultimately observed Hinshaw in the apartment. At that time, Klawon had reason to believe that Hinshaw resided at the apartment and that she was currently present. The existence of a valid arrest warrant authorized Officer Klawon to enter Hinshaw's apartment for the limited purpose of arresting her on the warrant. Accordingly, the trial court erred in concluding that Officer Klawon's entry into the apartment was unlawful.

{¶ 23} The State's first assignment of error is sustained.

### III. Independent Criminal Act

{¶ 24} The State's second assignment of error states:

The trial court erred by granting the Defendant's motion to suppress evidence because the Defendant's actions constituted an independent act not subject to the exclusionary rule.

{¶ 25} Under this assignment of error, the State claims that, even if the officer's entry were unlawful, Hinshaw's actions of providing false identifying information while

inside the apartment constituted an independent criminal act that was not subject to the exclusionary rule as fruit of the poisonous tree. However, because we have concluded that Officer Klawon lawfully entered Hinshaw's apartment to effectuate her arrest, we need not reach this issue. The State's second assignment of error is overruled as moot.

### IV. *Miranda* Issues

{¶ 26} In her motion to suppress, Hinshaw argued that her statements were obtained in violation of *Miranda*.

{¶ 27} In order to ensure that an individual's Fifth Amendment right against self-incrimination is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda* have been followed. *State v. White*, 2018-Ohio-3076, __ N.E.3d __, ¶ 16 (2d Dist.); *State v. Earnest*, 2d Dist. Montgomery No. 26646, 2015-Ohio-3913, ¶ 21. To counteract the coercive pressure of custodial interrogations, police officers must warn a suspect, prior to questioning, that he or she has a right to remain silent and a right to the presence of an attorney. *Maryland v. Shatzer*, 559 U.S. 98, 103-104, 130 S.Ct. 1213, 175 L.Ed.2d 1045 (2010), citing *Miranda*.

{¶ 28} Hinshaw made two sets of statements to Officer Klawon: (1) statements made in the apartment, in which she provided a false name and date of birth and (2) statements made while being taken to a cruiser after being handcuffed and removed from the apartment. Because the trial court concluded that Officer Klawon unlawfully entered the apartment and any subsequent acts by Hinshaw were the product of the illegal entry, the trial court did not reach the *Miranda* issue. There is no assignment of error related to *Miranda*, and we decline to address this issue in the first instance.

## IV. Conclusion

**{¶ 29}** The trial court's judgment will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, P. J. and TUCKER, J., concur.

Copies sent to:

Ebony N. Wreh
Jennifer Cunningham-Minnick
Hon. Mia Wortham Spells