**[Cite as *State v. Apple*, 2024-Ohio-2286.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-21 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-00290 |
| | : | |
| ROBERT D. APPLE | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on June 14, 2024

· · · · · · · · · · ·

THOMAS M. KOLLIN, Attorney for Appellant

R. KELLY ORMSBY, III, Attorney for Appellee

· · · · · · · · · · · ·

WELBAUM, J.

{¶ 1} Appellant, Robert D. Apple, appeals from his judgment of conviction in the Darke County Court of Common Pleas after pleading no contest to one count of aggravated possession of drugs and one count of having weapons while under disability. In support of his appeal, Apple contends that the trial court erred by failing to suppress evidence of illegal drugs and firearms discovered during a probation search of his

residence. Apple claims that the illegal drugs and firearms should have been suppressed because they were discovered after law enforcement unlawfully searched a locked safe located in his bedroom. According to Apple, the search of the safe was unlawful because it went beyond the scope of the probation search to which he had consented in his Conditions of Supervision. For the reasons outlined below, we find that the trial court properly overruled Apple's motion to suppress. Accordingly, the trial court's judgment of conviction will be affirmed.

## Facts and Course of Proceedings

{¶ 2} On November 17, 2022, a Darke County grand jury returned an indictment charging Apple with one count of aggravated possession of drugs (methamphetamine) and two counts of having weapons while under disability. The charges arose after multiple probation officers searched Apple's residence and found methamphetamine and two firearms inside a locked safe located in Apple's bedroom. Apple pled not guilty to the indicted charges and thereafter filed a motion to suppress the methamphetamine and firearms on grounds that those items were obtained via an unlawful search.

{¶ 3} On June 1, 2023, the trial court held a hearing on Apple's motion to suppress. During the hearing, the State presented testimony from Apple's probation officer, Amber Richardson, and two Darke County Sheriff's officers, Deputy Jamie Joseph and Detective Sergeant Christopher Clark. The following is a summary of the relevant facts that were presented during the officers' suppression hearing testimony.

{¶ 4} On September 8, 2022, Apple contacted law enforcement to report that an

individual named Nick Maynard was trespassing at his residence in the city of Greenville, Darke County, Ohio. In response, Dep. Joseph went to Apple's residence and facilitated Maynard's removal from the premises. While doing so, Maynard advised Joseph that Apple had firearms and a large amount of illegal drugs inside his residence. Joseph thereafter reported that information to Apple's probation officer, Richardson, who had been supervising Apple since November 2019.

{¶ 5} As part of his probation, Apple had agreed to various conditions set forth in a written Conditions of Supervision that Apple had signed on December 2, 2019. The Conditions of Supervision, which was entered into evidence as State's Exhibit 1, stated at paragraph nine that Apple agreed "to search[es], without warrant, of [his] person, [his] motor vehicle or [his] place of residence by [his] Probation Officer or other authorized representative of the Court at any time." Paragraph six of the Conditions of Supervision also provided that Apple agreed to "not purchase, possess, own, use or have under [his] control, any firearms[.]" At paragraph seven, Apple further agreed to "not purchase, possess, use or have under [his] control any narcotic drug or other controlled substance or illegal drugs, including any instrument, device, or other object used to administer drugs or to prepare them for administration[.]"

{¶ 6} After learning about Maynard's allegation that Apple had firearms and a large amount of illegal drugs inside his residence, Richardson and two of her fellow officers from the Adult Probation Department went to Apple's residence to conduct a search for those items. Because there was a possibility that firearms were inside the residence, the probation officers requested backup assistance from the Darke County Sheriff's

Office. This request led to Dep. Joseph, Det. Sgt. Clark, and Dep. Steven Kreitzer accompanying the probation officers to Apple's residence.

{¶ 7} Upon arriving at Apple's residence, the probation officers advised Apple that they were there to search his home because they had received information indicating that there were illegal drugs and firearms therein. Apple did not object to the officers searching his residence and permitted the officers to enter. Once inside the residence, the officers handcuffed Apple for officer safety purposes and began to search the residence. While searching the residence, the officers found several containers of marijuana and marijuana-related products such as vape cartridges, gummies, and smoking devices. The officers also found a five-foot-tall marijuana plant, plastic lined walls, hanging lights, marijuana growth and feeding charts, and other items that led Richardson to believe that Apple was maintaining a marijuana grow operation inside his residence.

{¶ 8} After finding all the aforementioned items, the officers found a locked safe underneath a desk/nightstand in Apple's bedroom. Richardson asked Apple to provide her with the code to open the safe, but Apple was reluctant to do so. Instead of providing Richardson with the code, Apple said "well, I'm going to prison." Suppression Hearing Tr. p. 37. Based on his response, Richardson told Apple that he "might as well just give [her] the code at this point." *Id.* Thereafter, Apple gave Richardson the code and the officers opened the safe. Inside the safe, the officers discovered two firearms and two baggies of white powder, later identified as methamphetamine.

{¶ 9} After the safe had been opened, Det. Sgt. Clark suggested getting a search

warrant before seizing the contraband inside. A search warrant for the safe was then prepared at the Darke County Sheriff's Office and approved by a judge. Once the search warrant was approved, the officers seized the methamphetamine and firearms from the safe. Thereafter, Apple was charged by indictment with the aforementioned counts of aggravated possession of drugs and having weapons while under disability.

{¶ 10} Following the suppression hearing, on June 20, 2023, the trial court denied Apple's motion to suppress. The decision included findings of fact that were consistent with the foregoing factual summary. Based on those findings, the court concluded that the search of Apple's residence and safe had not violated the Fourth Amendment and thus did not warrant suppressing the methamphetamine and firearms found inside the safe.

{¶ 11} After the trial court denied Apple's motion to suppress, Apple pled no contest to the single count of aggravated possession of drugs and to one of the counts for having weapons while under disability. The second count for having weapons while under disability was dismissed pursuant to a plea agreement. The trial court thereafter accepted Apple's no contest pleas, found him guilty, and sentenced him to an indefinite term of two to three years in prison for aggravated possession of drugs and a concurrent 18-month prison term for having weapons while under disability.

{¶ 12} Apple now appeals from his convictions, raising a single assignment of error for review.

**Assignment of Error**

{¶ 13} Apple contends that the trial court erred by denying his motion to suppress the methamphetamine and firearms found inside his safe. Apple claims the items should have been suppressed as evidence because they were obtained through an unlawful search that went beyond the scope of the probationer search to which he had consented in his Conditions of Supervision. For the reasons outlined below, we disagree with Apple's argument.

*Standard of Review*

{¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). "Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997). Accordingly, "[t]he trial court's application of law to the findings of fact is subject to a de novo standard of review." (Citation omitted.) *State v. Shepherd*, 2d Dist. Montgomery No. 29123, 2021-Ohio-4230, ¶ 10.

*Relevant Fourth Amendment Principles*

**{¶ 15}** The Fourth Amendment to the United States Constitution and Article I, Section 14, of the Ohio Constitution guarantee the right to be free from unreasonable searches and seizures. Pursuant to the exclusionary rule, "[c]ourts must exclude evidence obtained by searches and seizures that violate the Fourth Amendment." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 181, citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Searches and seizures conducted without a warrant are unreasonable and violate the Fourth Amendment unless they are "conducted pursuant to one of the 'few specifically established and well-delineated exceptions.' " *State v. Turpin*, 2017-Ohio-7435, 96 N.E.3d 1171, ¶ 10 (2d Dist.), quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). One of those exceptions is a valid consensual search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

**{¶ 16}** The Supreme Court of Ohio has recognized that a probationer effectively consents to warrantless searches by a probation officer at any time when the probationer signs conditions of supervision that includes a consent-to-search term that agrees to such warrantless searches. *State v. Benton*, 82 Ohio St.3d 316, 321, 695 N.E.2d 757 (1998) ("[b]ecause the defendant agreed to the condition of supervision by signing it, thereby consenting to warrantless searches of his place of residence by a parole officer at any time, the defendant waived his Fourth Amendment protection against random searches"); *State v. Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, 211 N.E.3d 1174, ¶ 12, ("there

is no Fourth Amendment violation when a probation officer conducts a suspicionless search pursuant to a consent-to-search provision agreed to as a condition of community control"). Therefore, " '[a] warrantless search performed pursuant to a condition of [probation] requiring a [probationer] to submit to random searches of his or her person, motor vehicle, or place of residence by a [probation] officer at any time is constitutional' as a consent search." *State v. Norman*, 2014-Ohio-5084, 21 N.E.3d 1153, ¶ 29 (12th Dist.), quoting *Benton* at syllabus.

{¶ 17} In this case, paragraph nine of the Conditions of Supervision signed by Apple permitted probation officers to search Apple's person, motor vehicle, and place of residence at any time without a warrant. *See* State's Ex. 1. Apple does not dispute that he consented to the probation officers' warrantless search of his residence by signing the Conditions of Supervision. Apple argues, however, that the officers exceeded the permissible scope of the search when they opened the locked safe that contained methamphetamine and firearms. According to Apple, the safe was off limits since his Conditions of Supervision did not include a consent-to-search term that specifically allowed probation officers to conduct warrantless searches of his personal property. Therefore, Apple claims the warrantless search of the safe violated the Fourth Amendment and required suppression of the evidence found therein.

{¶ 18} In support of his argument, Apple relies on the United States Supreme Court's analysis in *Florida v. Jimeno*, 500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). In *Jimeno*, the court explained that: "The [Fourth] Amendment is satisfied when, under the circumstances, it is objectively reasonable for the police to believe that the

scope of the suspect's consent [to search] permitted them to open the particular container [in question]." *Id.* at syllabus. In applying that principle, the court held that it was reasonable for an officer to consider a suspect's general consent to search his car to include examining the contents of a paper bag lying on the floor of the car. *Id.* at 251. The court, however, distinguished the paper bag scenario from a scenario in which an officer pried open a locked briefcase found inside the trunk of a car. The court found that it was "unreasonable to think that a suspect, by consenting to the search of his trunk, has agreed to the breaking open of a locked briefcase within the trunk, but it is otherwise with respect to a closed paper bag." *Id.* at 252.

{¶ 19} Apple claims that the present case is analogous to the locked briefcase scenario. Apple also likens this case to *State v. Rodriguez*, 83 Ohio App.3d 829, 615 N.E.2d 1094 (2d Dist.1992), wherein this court found that it was not objectively reasonable for an officer to believe that a motorist's consent to search his car extended to the officer's removing an interior panel of a vehicle to locate contraband. Specifically, we held in *Rodriguez* that: "Given the absence of a search warrant, or any recognized exception to the search warrant requirement, the removal of the interior panel was impermissible under the Fourth Amendment. *Id.* at 835.

{¶ 20} Apple's reliance on *Jimeno* and *Rodriguez* is misplaced because those cases did not involve a probationer search, but searches resulting from traffic stops. This is significant because "probationers * * * 'do not enjoy the "absolute liberty to which every citizen is entitled, but only * * * conditional liberty properly dependent on observance of special [probation] restrictions." ' " *United States v. Payne*, 588 Fed.Appx. 427, 431 (6th

Cir.2014), quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L.Ed. 2d 709 (1987), quoting *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). "In fact, 'the [United States] Supreme Court has made clear that the nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment.' " *Id.*, quoting *United States v. Herndon*, 501 F.3d 683, 687 (6th Cir.2007). Specifically, the Supreme Court has "created 'two distinct analytical approaches under which a warrantless probationer search may be excused' and still meet the requirements of the Fourth Amendment." *United States v. Fortson*, 642 F.Supp.3d 639, 645 (N.D.Ohio 2022), quoting *Herndon* at 688. *See also United States v. Fletcher*, 978 F.3d 1009, 1015 (6th Cir.2020). "One arises from the Supreme Court's decision in *Griffin v. Wisconsin*, [483 U.S. 868, 107 S. Ct. 3164, 97 L.Ed. 2d 709 (1987)] * * * and the other from the Court's decision in *United States v. Knights*, [534 U.S. 112, 122 S.Ct. 587, 151 L.Ed. 2d 497 (2001)]." *Fletcher* at 1015. " 'If a warrantless search is reasonable under either *Knights* or *Griffin*, it need not pass muster under the other.' " *United States v. Huber*, 622 F.Supp.3d 645, 651 (N.D.Ohio 2022), quoting *Payne* at 431, citing *Herndon* at 688. We will, however, discuss both *Griffin* and *Knights*.

*The Griffin Analysis*

**{¶ 21}** The *Griffin* analysis considers whether a warrantless probationer search conducted pursuant to a state statute or regulation is valid under the Fourth Amendment. *Herndon* at 687; *Huber* at 650; *Griffin* at 872-873. In *Griffin*, the United States Supreme

Court held that a warrantless search of a probationer's home "was 'reasonable' within the meaning of the Fourth Amendment because it was conducted pursuant to a valid regulation governing probationers." *Griffin* at 880. In so holding, the court created a two-pronged analysis where courts must first " 'examine whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment's reasonableness requirement. If [it does], courts then analyze whether the facts of the search itself satisfy the regulation or statute at issue.' " *Fletcher* at 1015, quoting *United States v. Loney*, 331 F.3d 516, 520 (6th Cir.2003). If these two inquiries are satisfied, the warrantless probation search does not offend the Fourth Amendment.

{¶ 22} In this case, the State cites R.C. 2951.02(A)(1)(a) as the relevant statute that provided the probation officers with authority to search Apple's safe without a warrant. R.C. 2951.02(A)(1)(a) provides, in relevant part, as follows:

> [D]uring the period of a felony offender's nonresidential sanction, authorized probation officers who are engaged within the scope of their supervisory duties or responsibilities may search, with or without a warrant, the person of the offender, the place of residence of the offender, and a motor vehicle, another item of tangible or intangible personal property, or other real property in which the offender has a right, title, or interest * * * if any of the following apply:
>
> (a) The probation officers have reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with the * * * conditions of the felony offender's nonresidential sanction.

**{¶ 23}** "With respect to the first prong of the *Griffin* analysis, * * * a state statute survives Fourth Amendment scrutiny if it authorizes searches of [probationers] based on a reasonable suspicion that an individual is violating the terms or conditions of [probation]." (Citation omitted.) *Loney*, 331 F.3d at 520-521. As noted above, R.C. 2951.02(A)(1)(a) authorizes warrantless searches of a probationer and any personal property in which he has an interest if the "probation officers have *reasonable grounds to believe that the offender is not abiding by the law or otherwise is not complying with * * * the conditions of the felony offender's nonresidential sanction.*" (Emphasis added.) R.C. 2951.02(A)(1)(a). In light of this language, the Sixth Circuit Court of Appeals has found that R.C. 2951.02(A)(1)(a) satisfies the Fourth Amendment's reasonableness requirement and, in turn, the first prong of the *Griffin* analysis as well. *See Fletcher*, 978 F.3d at 1015, citing *United States v. Goliday*, 145 Fed.Appx 502, 505 (6th Cir.2005); *Fortson*, 642 F.Supp.3d at 645. We agree and therefore find that the first prong of the *Griffin* analysis is satisfied in this case.

**{¶ 24}** Having found that the first prong of the *Griffin* analysis is satisfied, we must look to the second prong and determine whether the search of Apple's safe satisfied the search provision in R.C. 2951.02(A)(1)(a). Unlike Apple's Conditions of Supervision, R.C. 2951.02(A)(1)(a) expressly authorizes probation officers to search an "item of tangible or intangible personal property * * * in which [Apple] has a right, title, or interest" without a warrant if the probation officers have "reasonable grounds" to believe that Apple is not abiding by the law or is not complying with his Conditions of Supervision. R.C. 2951.02(A)(1)(a). Therefore, we must determine whether the officers in this case had

such reasonable grounds. "[I]n order to establish 'reasonable grounds,' an officer need not possess the same level of certainty that is necessary to establish 'probable cause.' " *State v. Jones,* 2d Dist. Montgomery No. 25388, 2013-Ohio-2231, ¶ 18, quoting *State v. Karns,* 196 Ohio App.3d 731, 2011-Ohio-6109, 965 N.E.2d 352, ¶ 33 (5th Dist.). "Instead, the officer's information need only establish the 'likelihood' that contraband will be found[.]" *Id.*

{¶ 25} In this case, the trial court's findings of fact, which were supported by competent credible evidence, established that when the officers entered Apple's residence for the purpose of conducting a lawful, consensual search of the residence pursuant to Apple's Conditions of Supervision, they observed several containers of marijuana, marijuana products, smoking devices, and a five-foot-tall marijuana plant. Although not mentioned by the trial court, the record established that the officers also observed plastic lined walls, hanging lights, marijuana growth and feeding charts, and other items indicating that Apple was maintaining a marijuana grow operation inside his residence. These observations alone would have provided the probation officers with more than reasonable grounds to believe that Apple was neither abiding by the law nor complying with his Conditions of Supervision; the possession and cultivation of marijuana was not legal in Ohio at that time,[1] and paragraph six of Apple's Conditions of Supervision prohibited him from possessing illegal drugs and devices used to administer them.

{¶ 26} In addition to observing the marijuana and marijuana-related products in

---

[1] The Ohio statute that authorizes the possession and cultivation of marijuana under various conditions, i.e. the Adult Use Cannabis Control statute, Chapter 3780 of the Ohio Revised Code, became effective on December 7, 2023, which was well over a year after the probation officers searched Apple's residence and safe.

Apple's residence, the officers were aware that Maynard had told Ofc. Joseph that Apple had firearms and a large amount of illegal drugs inside his residence. Because Maynard's statement regarding the presence of illegal drugs was validated when the officers observed the marijuana in Apple's residence, it would have been reasonable for the officers to believe that Maynard's claim regarding the presence of firearms was valid as well. In other words, considering Maynard's statement to Ofc. Joseph and the marijuana and marijuana-related products observed in the residence by the officers, we find that the officers had sufficient information or "reasonable grounds" to believe that Apple was violating the terms of his Conditions of Supervision that prohibited him from possessing firearms and illegal drugs. Based on those reasonable grounds, we find that R.C. 2951.02(A)(1)(a) provided the probation officers with authority to conduct a warrantless search of Apple's personal property, including his safe. Therefore, the officers' warrantless search of Apple's safe did not exceed their statutory authority under R.C. 2951.02(A)(1)(a).

{¶ 27} Because the warrantless search of Apple's safe was conducted pursuant to a valid statute that met the Fourth Amendment's reasonableness requirement, the search was reasonable within the meaning of the Fourth Amendment. *See Griffin.* Therefore, the warrantless search of Apple's safe was constitutional and did not warrant suppression of the methamphetamine and firearms found therein.

*The Knights Analysis*

{¶ 28} The *Knights* analysis considers whether a warrantless probationer search

is reasonable under the Fourth Amendment by applying a totality-of-the-circumstances test that assesses, on one hand, the degree to which the warrantless probationer search intrudes upon an individual's privacy and, on the other, the degree to which the search is needed for the promotion of legitimate governmental interests. *Fletcher,* 978 F.3d at 1018; *Herndon*, 501 F.3d at 690; *Knights*, 534 U.S. 112 at 119, 122 S.Ct. 587, 151 L.Ed.2d 497. Applying that test, the court in *Knights* held that a "warrantless search * * *, supported by reasonable suspicion and authorized by a probation condition, satisfied the Fourth Amendment." *Knights* at syllabus. In other words, "[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable." *Id.* at 121.

{¶ 29} We note that the court in *Knights* indicated that a probation condition for warrantless searches is a "salient circumstance" in the analysis since the probationer's reasonable expectation of privacy is significantly diminished when the probation agreement (conditions of supervision) clearly expresses the condition and unambiguously informs the probationer of the condition. *Id.* at 118-120. The court also determined that it did not need to decide whether a probationer's acceptance of such a condition constituted a waiver of the probationer's Fourth Amendment rights since the totality-of-the circumstances test had been satisfied in that case. *Id.* at syllabus. However, as previously discussed, the Supreme Court of Ohio has held that agreeing to warrantless searches as a condition of probation would indeed waive a probationer's Fourth

Amendment protection against random warrantless searches by probation officers. *Benton*, 82 Ohio St.3d at 321, 695 N.E.2d 757; *Campbell*, 170 Ohio St.3d 278, 2022-Ohio-3626, 211 N.E.3d 1174 at ¶ 12.

{¶ 30} Upon review, we recognize that Apple's argument on appeal has more force under the *Knights* analysis simply because *Knights* requires us to consider Apple's Conditions of Supervision as opposed to R.C. 2951.02(A)(1)(a). As previously discussed, Apple claims that the terms of his Conditions of Supervision did not authorize the warrantless search of his safe because there was no term authorizing the probation officers to conduct warrantless searches of his personal property, but only searches of his person, motor vehicle, and place of residence. In support of this argument, Apple directs our attention to case law holding that a probationer's cell phone would not be included in the search of a probationer's residence. *See Campbell* at ¶ 16, citing *Fletcher*, 978 F.3d at 1019 (holding that a consent-to-search provision in a probation agreement that authorized probation officers to search the probationer's person, motor vehicle, and residence without a warrant, but not mentioning personal property, did not "clearly or unambiguously" extend to the probationer's cell phone).

{¶ 31} However, we have no difficulty distinguishing a cell phone, which is a highly portable, electronic device that holds a myriad of information, from a safe that is kept inside a residence. We find that it would have been reasonable for the probation officers to believe that the probation condition authorizing them to conduct warrantless searches of Apple's residence encompassed searching property like a refrigerator, an armoire, or in this case, a safe. Accordingly, we are inclined to find that the consent-to-search term

in Apple's Conditions of Supervision allowing probation officers to search Apple's residence at any time without a warrant encompassed the search of the safe in Apple's residence. *See United States v. Wood*, 16 F.4th 529, 536-537 (7th Cir.2021) ("[C]lear expression [of a search condition] does not require an exhaustive list. Probation agreements need not express, in granular detail, every item subject to a search.").

{¶ 32} Such finding would result in the search of Apple's safe being constitutional under the *Knights* analysis because the officers had reasonable suspicion of criminal activity based on the marijuana and marijuana-related products they observed in Apple's residence and based on Maynard's statement to Ofc. Joseph that Apple had illegal drugs and firearms in the residence. Under *Benton* and *Campbell*, a finding that the safe was part of the residence would compel the conclusion that Apple waived his Fourth Amendment protection by his effectively consenting to the search of his safe.

{¶ 33} We, however, need not delve deeply into the alternative analyses provided by *Knights*, *Benton,* and *Campbell* because, even if the Conditions of Supervision term authorizing probation officers to search Apple's residence without a warrant did not encompass Apple's safe, the fact remains that the search of Apple's safe was constitutional under the statutory analysis in *Griffin*. Because the warrantless search of Apple's safe was constitutional under *Griffin*, Apple's claim that the trial court erred by failing to suppress the methamphetamine and firearms found in the safe lacks merit.

{¶ 34} Apple's sole assignment of error is overruled.

**Conclusion**

{¶ 35} Having overruled Apple's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


TUCKER, J. and HUFFMAN, J., concur.