[Cite as *State v. Hayden*, 2022-Ohio-3933.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-210352 |
| | | TRIAL NO. B-2003803 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LOGAN HAYDEN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: November 4, 2022

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher,* and *Elizabeth Conkin*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Logan Hayden appeals his convictions for multiple offenses including drug trafficking, drug possession, and having weapons while under disability. He additionally appeals the indefinite sentences the court imposed under the Reagan Tokes Law for the two most serious offenses. Hayden argues that the trial court erroneously denied his motion to suppress the evidence, his convictions were not supported by the evidence, and the Reagan Tokes Law is unconstitutional. For the following reasons, we affirm.

## I. Background Facts and Procedure

{¶2} In 2020, Hayden was on community control as a sanction for a drug-trafficking offense. His community-control sanctions involved local incarceration at the River City Correctional Center and, upon his release from River City, intensive supervision through Hamilton County's Adult Probation Department and Electronic Monitoring Unit ("EMU"), which we refer to as probation.

{¶3} Hayden was successfully discharged from River City and placed on probation on July 17, 2020. Billy Scott, a supervisor at River City whom Hayden had met while incarcerated, allowed Hayden to reside in his home and to use his white 2011 Chevy Malibu during his stay.

{¶4} Hayden signed forms when he was placed on probation. These forms contained his acknowledgement of, and agreement to, certain rules and conditions of probation, including subjection to certain warrantless searches, wearing an electric monitoring device ("EMD") with a Global Positioning System ("GPS") on his ankle, obeying all laws, and staying inside his residence except for limited times and for limited activities.

{¶5} After Hayden moved into Scott's home, Hayden's probation officers closely monitored Hayden's movements by using GPS mapping technology and by observing him driving the Malibu. The probation officers noticed that Hayden was not abiding by his restricted schedule and had been present for short periods of time in multiple parks and gas stations around the city on the same day, often in the early morning hours, a pattern consistent with drug trafficking. Based on this information, the probation officers decided to visit Hayden's residence on July 31, 2020, to ensure Hayden was complying with the conditions of his probation.

{¶6} Just before the visit, the probation officers noticed that Hayden had again left his residence at a restricted time. When they arrived at the residence, however, Hayden was observed on the street outside the home sitting in the driver's seat of the Malibu with the engine still running. The probation officers asked Hayden to turn off the car and accompany them into the home. Inside the home, the probation officers searched Hayden's bedroom area but found no contraband.

{¶7} Scott was in the home at the time getting ready to leave for work. The probation officers saw Hayden give Scott the keys to the Malibu and whisper into Scott's ear. One of the probation officers told Scott that he intended to search the Malibu. Scott handed the probation officer the keys and gave the probation officer express consent to search the Malibu. Scott also informed the probation officer that he had not driven the car that day and that no one else ever drove the car.

{¶8} The probation officers discovered contraband in the Malibu. Specifically, they found a bag placed in the driver's side door pocket containing 17.587 grams of methamphetamine, a digital scale with heroin, fentanyl, and methamphetamine residue, two different morphine pills, and a baggie containing

3

3.133 grams of a mixture of heroin, cocaine, fentanyl, and xylazine, and a bag in the trunk of the car containing a loaded semiautomatic pistol. The probation officers also found in the back seat paperwork such as mail addressed to Hayden. The probation officers then arrested Hayden.

{¶9} A Cincinnati police officer called to the scene searched Hayden's person and found currency in mixed bills totaling $1000. That officer subsequently obtained a ballistics report demonstrating that the handgun found in the trunk of the Malibu was operable and was a "positive match" for the weapon used in a shooting on July 29, 2020, around midnight. The police further linked Hayden to the July 29 shooting because Hayden's GPS mapping location at the time of the shooting placed him at the scene, and a surveillance video of the shooting indicated that the shots were fired out of a car resembling the Malibu.

{¶10} The state indicted Hayden for 11 counts of various drug and firearm-related offenses. Hayden filed a motion to suppress all the evidence recovered from his person and from the Malibu.

{¶11} In his motion, Hayden acknowledged that as a condition of his probation he had consented to a warrantless search of both his residence and the car, if probation officers had reasonable grounds to believe that he was not abiding by the law or otherwise was not compliant with the conditions of his probation. Contending his consent was exceeded because the officers lacked the requisite reasonable grounds, Hayden argued his Fourth Amendment Rights were violated and all evidence from the home visit had to be suppressed as "fruit of the poisonous tree."

{¶12} The state argued that the probation officers' actions were within the scope of Hayden's consent to warrantless searches because they had the requisite

4

reasonable grounds, and the probation officers had obtained separate consent from Scott that justified the search of the Malibu.

{¶13} After an evidentiary hearing, the trial court agreed with the state and overruled the motion. The case proceeded to a bench trial and Hayden was found guilty of all offenses. Before sentencing, Hayden requested to be sentenced under the former, definite sentencing scheme for all his offenses, arguing that the newly enacted Reagan Tokes Law, which applied to the first- and second-degree-felony offenses, was unconstitutional. The trial court rejected Hayden's constitutional challenge and imposed an indefinite sentence for the most serious offenses and a definite sentence for the remaining offenses, with an aggregate sentence of nine to 11 years in prison. Hayden now appeals that judgment.

## II. Analysis

### A. Motion to Suppress

{¶14} In his first two assignments of error, Hayden argues the trial court erred by overruling his motion to suppress the drugs, money, handgun, and other contraband found in the Malibu and on his person at the conclusion of the probation officers' home visit. Hayden maintains that the actions of the probation officers were constitutionally unreasonable and resulted in a violation of his Fourth Amendment rights.

{¶15} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152,

5

2003-Ohio-5372, 797 N.E.2d 71, ¶ 8, cited in *State v. Richardson*, 1st Dist. Hamilton No. C-200187, 2021-Ohio-2751, ¶ 13.

**{¶16}** The Fourth Amendment secures the right to be free from an unreasonable search or seizure and requires a warrant to be particular and supported by probable cause. Evidence derived from a search or seizure that violates the Fourth Amendment is subject to exclusion at trial. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**{¶17}** An exception to the warrant requirement is consent. *See Richardson* at ¶ 20. Generally, consent is valid if it is given freely and voluntarily, under the totality of the circumstances. *Id.* at ¶ 21, citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S. Ct. 2041, 36 L.Ed.2d 854 (1973); *State v. Smith*, 1st Dist. Hamilton No. C-061032, 2007-Ohio-3786, ¶ 13.

**{¶18}** A probationer may validly consent to warrantless searches and seizures, even random searches and seizures, as a condition of probation. *See State v. Campbell*, Slip Opinion No. 2022-Ohio-3226, ¶ 12.

**{¶19}** Here, Hayden acknowledged in his motion to suppress that he had consented to certain warrantless searches and seizures by his probation officer as a condition of probation. He conceded that based on his consent to the probation conditions, the challenged actions of the probation officers were constitutionally reasonable if the probation officers had reasonable grounds to believe that he was violating the law or the terms of his probation.

**{¶20}** At the hearing on the motion, Hayden's probation officers testified that they were monitoring Hayden electronically as part of a probation condition for his prior drug trafficking conviction. Further, Hayden's probation conditions allowed him

to leave his residence solely at specific times and for specific purposes, such as looking for a job. The officers testified that GPS location data showed Hayden's location outside the home he shared with Scott beyond those restricted times and under circumstances indicating a disallowed purpose.

{¶21} This evidence established that Hayden was repeatedly outside his residence in violation of the terms of probation and had engaged in a pattern of making short stops at gas stations and parks at odd hours, circumstances indicative of drug trafficking. Thus, before the probation officers began the home visit, they had reasonable grounds as contemplated by Hayden's consent-to-search agreement.

{¶22} This evidence also established that when the probation officers were in the home to search Hayden's bedroom, the officers observed Hayden whisper something into Scott's ear as he gave Scott the keys to the Malibu. Hayden's surreptitious actions served to further fuel the probation officers' reasonable suspicions. One of the probation officers then obtained consent from Scott to search the Malibu. The testimony concerning Scott's consent was uncontroverted at the suppression hearing.

{¶23} Thus, we hold the trial court properly overruled Hayden's motion to suppress, because the record of the proceedings at the hearing on the motion to suppress contains competent and credible evidence of consent.

{¶24} For the first time, Hayden argues the evidence should be suppressed because the state failed to demonstrate at the suppression hearing that the sentencing court in Hayden's prior case had complied with the notification provision of R.C. 2951.02(A).

{¶25} Generally, R.C. 2951.02(A) affords probation officers statutory authority to perform warrantless searches of probationers and their effects so long as the probation officers have reasonable grounds. The statute also contains a provision directing the court that sentences a felony offender to a nonresidential community-control sanction, such as intensive probation supervision or electronic monitoring, to notify the probationer that he or she will be subjected to the reasonable-grounds searches authorized by R.C. 2951.02(A).

{¶26} In this case, the state presented as evidence at the suppression hearing the probation department and electronic monitoring unit forms Hayden signed as a condition of probation in the prior case, but the state did not present evidence demonstrating the sentencing court had complied with R.C. 2951.02(A)'s notification provision. For this reason, Hayden contends the probation officers lacked the authority to search his residence and the Malibu and that all the evidence must be suppressed as a result. We are not persuaded.

{¶27} First, this argument is contrary to Hayden's position in the trial court and cannot be raised now. *See State v. Curry*, 1st Dist. Hamilton No. C-210274, 2022-Ohio-627, ¶ 15. Hayden conceded that the only issue with respect to his motion was the constitutionality of the search, and that inquiry was limited to whether the probation officers had reasonable grounds to believe that Hayden was violating the law or the terms of his probation.

{¶28} Further, Hayden does not cite any authority supporting his argument that the exclusionary rule applies to statutory violations. The Ohio Supreme Court recently reviewed this issue with respect to R.C. 2951.02(A) in *Campbell.* That case involved a random search of a probationer that was constitutionally reasonable due to

the probationer's consent to random searches, but that exceeded the scope of the probation officer's authority conferred by R.C. 2051.02(A) because it was not based on "reasonable grounds." *See Campbell*, Slip Opinion No. 2022-Ohio-3626.

**{¶29}** When rejecting a claim that the fruits of that unauthorized random search should be suppressed, the *Campbell* court explained that the Fourth Amendment's exclusionary rule does not apply when there has been no constitutional violation, and R.C. 2951.02(A) did not contain a legislative mandate to impose an exclusionary remedy for a violation of the statute's reasonable-grounds requirement. *Id.* at ¶ 21-23.

**{¶30}** Here, Hayden makes no argument that R.C. 2951.02(A) contains an exclusionary remedy for a violation of the notice provision in the statute, and the statute plainly reveals no mandate. Thus, to the extent that Hayden preserved this issue for purposes of appeal, he has not demonstrated meritorious grounds for suppression of the evidence.

**{¶31}** Consequently, we conclude that the trial court properly overruled Hayden's motion to suppress. Accordingly, we overrule the first and second assignments of error.

### B. Sufficiency and Weight of the Evidence

**{¶32}** We next address Hayden's fourth and fifth assignments of error. He argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

**{¶33}** The contested issue at trial involved whether the state could sufficiently tie Hayden to the drugs and handgun recovered in the Malibu. The state presented the testimony of the probation officers who recovered the contraband from the Malibu

and testimony of the police officer who recovered the large sum of cash on Hayden's person. The state additionally presented GPS evidence of Hayden's locations and video surveillance evidence of a nearby shooting and ballistics evidence from the shooting that tied the handgun to Hayden.

{¶34} Scott also testified for the state. Scott said that he had no connection to the drugs and handgun found in his Malibu. He explained that he had worked as a supervisor at River City and sometimes allowed those incarcerated there to stay with him upon release. He met Hayden this way and allowed Hayden to stay with him and to drive his car because Hayden told him he was out of options. Scott further testified that Hayden had driven the Malibu almost exclusively during the short time he lived with him and that he was unaware of another car that Hayden had access to. Finally, Scott testified that when the probation officers searched his home on July 31, 2020, Hayden had whispered in his ear, "Don't let them search the car."

{¶35} Scott's testimony was consistent with the other evidence at trial implicating Hayden. The probation officers recalled that Hayden had whispered something in Scott's ear when he gave Scott the keys to the Malibu. Further, the GPS data demonstrated that Hayden had engaged in a pattern of activity consistent with drug trafficking prior to the home visit, and that Hayden was at the scene of the shooting tied to a white sedan like the Malibu and the handgun recovered in the Malibu.

{¶36} As part of the investigation, law enforcement did not find contraband in Hayden's bedroom, nor did the officers search the rest of the home occupied by Scott and Hayden. But the police located inside the Malibu all the contraband needed for

drug trafficking except for the money. Importantly, that money was found on Hayden's person.

{¶37} Considering this evidence, we conclude that Hayden's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Accordingly, we overrule the fourth and fifth assignments of error.

### C. Constitutionality of Reagan Tokes Law

{¶38} In his third assignment of error, Hayden presents several arguments as to why the Reagan Tokes Law on its face violates the United States and Ohio Constitutions. Specifically, he maintains that the Reagan Tokes Law violates the separation-of-powers doctrine and due-process provisions. Hayden's challenge is ripe for review in his direct appeal of his indefinite sentence. *See State v. Maddox*, Slip Opinion No. 2022-Ohio-764, ¶ 11 and 21.

{¶39} This court addressed a similar challenge to the Reagan Tokes Law in *State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962. In *Guyton*, we determined that the Reagan Tokes Law was constitutional on its face, rejecting a claim that the indefinite sentencing scheme violates the separation-of-powers doctrine, substantive- and procedural-due-process provisions, and the Equal Protection Clauses

of the federal and state constitutions. Based on our holding in *Guyton*, we overrule Hayden's third assignment of error.

### III. Conclusion

**{¶40}** Considering the foregoing analysis, we affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.